And we have for the appellant, Attorney Brent Holmes and Jennifer Holt.     Thank you. Thank you. Thank you. And for Hey-Pull? Cable. And are both of you going to be arguing today? I'll be doing that. Okay. And for the appealey we have Rochelle Pfunderburgh. Thank you. THE appellant may proceed. May it please the Court, Counsel. I appeal today on three issues before you. Those issues are, first, whether the trial court incorrectly granted Mr. Wann's motion for the transfer of venue from Coles County to Champaign County. Secondly, whether the trial court erred when it incorrectly deemed the affirmative defense of Holder and DeCourse to be established against Hayworth Homes because they did not file a written answer to the affirmative defense. And thirdly, whether the trial court inappropriately denied Hayworth Homes' timely motion to vacate judgment. I'll briefly summarize the necessary facts here. Hayworth Homes is a construction company that employed a secretary by the name of Tabitha Binningfield. She oversaw their financial accounts. Unbeknownst to them, she forged checks out of their business account and wrote them over to Mr. Wann, the appellee, for unpaid rent on three separate occasions, totaling an amount of $5,430. Was she a signatory on the account? She was not. This was a computer-generated check that had a standard computer-generated signature. So it had an appropriate signature, so the bank cannot be faulted for cashing the check, I take it? Yes, Your Honor. But these checks were presented to payment on Hayworth Homes' business checking account in First Mid Bank & Trust in Charleston, Illinois. Hayworth Homes filed its complaint against the defendant or appellee, Mr. Wann, in Coles County. However, the court granted transfer of venue to Champaign County. Following the transfer of venue, there was a calendaring mistake for counsel for Hayworth Homes, misheard the trial date, and was not present then on the date of trial. At that time, a judgment was entered in favor of the appellee. Shortly thereafter, a timely motion to vacate judgment was filed by Hayworth Homes and was denied by the trial court because Judge Leonard believed that the Hayworth Homes underlying claim for conversion was without any legal basis. The first issue is the issue of venue. We believe the court erred when it granted the motion to transfer venue. The standard of review here is de novo. 735 ILCS 5-2-101 states that every action must be commenced in the county in which the transaction or some part thereof occurred out of which the cause of action arose. The case of O'Connell v. Chicago Park District states that a cause of action for conversion accrued when the defendant exercised unauthorized control over the plaintiff's property. Further here, the property is the money belonging to Hayworth Homes. 810 ILCS 5-3-420 states an instrument is converted if a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce said instrument or receive payment. Hayworth Homes' bank account where the checks were presented for payment is First Midbank & Trust located in Charleston, Illinois, Poles County. The money in question was converted once those funds were taken out of that bank account. And that is the point in time in which Mr. One exercised unauthorized control over those funds. Counsel, let me ask you a question. When was that decision entered, transferring it to Champaign County? That decision was made on... I don't have the specific date in front of me, Your Honor. Okay, but sometime before the trial took place, is that correct? That's correct, Your Honor. And was that decision appealed? It was not. Does that affect our jurisdiction? I don't believe it does, Your Honor. Why not? I believe that the appeal at the completion of the case, this is a final judgment now, we can appeal any previous decisions that were made in the case at this point in time. So you don't believe there's been any waiver as to the transfer of venue issue? No, Your Honor. Further, I believe that the transfer of venue here was an error because at no point in time was that, or at all points in time previously, Coles County was the appropriate venue because that was when the funds were transferred out of Hayworth Holmes' bank account. Mr. Hayworth Holmes never transacted any business with Mr. One. He didn't owe him any money and had no right to the funds. The action of taking the checks from his renter was not the site of the conversion. Mr. One could have torn those checks up, thrown them away, or returned them to Hayworth Holmes. When that check was presented for payment and those funds were removed from Hayworth Holmes' account, that was when the conversion occurred. I think this analogy helps to explain why venue is proper in Coles County. Imagine a thief claiming to own a portable generator, sells it to Mr. One in Champaign County. He gives him a MapQuest printout of where to pick it up in Coles County. Mr. One has a friend who lives in Charleston pick it up for him and bring it to him. Mr. One later discovers that the generator is the property of Hayworth Holmes and has been taken from one of their construction sites. Here, venue would be proper in Coles County because that was where the conversion occurred and not in Champaign where Mr. One dealt with the thief. In the instant case, the conversion occurred when the funds were removed from Hayworth Holmes' bank account and not when Mr. One accepted paper checks. Therefore, clearly some part of the transaction occurred in Coles County and the trial court's transfer of venue to Champaign County is reversible error. Furthermore, any judgment or order following an improper denial of petition for change of venue is void according to the cases Peoria v. Peoria Rental Inc. and Freed v. McDaniel. Following this line of case law, because venue was erroneously transferred to Champaign County, all subsequent orders including that judgment entered against Hayworth Holmes are void and in this case should be remanded back to Coles County for further proceedings. The second issue before the court today is whether the trial court erred when it incorrectly deemed the affirmative defense upholder in due course to be established against Hayworth Holmes because it did not file a written answer. There was a trial in absentia held in Champaign on the date in which Hayworth Holmes failed to appear. At that time, the trial court stated that Hayworth Holmes had committed a procedural default by not answering the affirmative defense asserted by Mr. One, upholder in due course. Is that actually what the court said? Are you reading?  Well, I mean, if you look carefully at the report of proceedings there, I don't think the court said that. I think the court noted perhaps a procedural default but also went into ruling on the merits based on the evidence that was presented. So, you know, when you frame the issue as the trial court having entered judgment based on a failure of your client to have answered the affirmative defense, I don't think that that accurately frames the issue here. So maybe go to the merits of it. Yes, Your Honor. I believe that it's important to point this issue out because I think the judge incorrectly applied the law here as he did in our motion to vacate. And that's why I bring it to the court's attention. I will move on to my third issue. Regarding the issue of holder in due course, I don't believe that Mr. One can be considered a holder in due course. He did not take the check in good faith, which is one of the requirements of being a holder in due course. He never had any business transactions with Hayworth Homes. The check was made directly from Hayworth Homes to Michael One. At any point had they ever met, there was no connection between these parties at all. Further, at no point did Mr. One testify that he was aware even that Mrs. Benningfield was an employee of Hayworth Homes. So based on those issues, I believe that this should have created significant questions in his mind and should have created an issue as to taking it in good faith. The mutual service casualty company, the Elizabeth State Bank case stated, The court determined that knowledge of potential foul play is imputed to a party accepting a check where the employee of a drawer attempts to negotiate a check, and the drawer owes no debt to the party accepting the check. Similarly here, the checks were presented to Mr. One for payment of rent by an employee of Hayworth Homes, were written out of the business account of Hayworth Homes, and contained a computer-generated signature. All of these should have raised doubts in his mind, and therefore his failure to do so will allow foul play to be imputed to him. You say that he should have just torn up the check at that point? I think he should have had some questions as to its authenticity. Clearly, this is a computer-generated signature. Not one, but three separate occasions these checks were written out to him for the rent of an employee. I believe it's illogical to believe that an employer is just going to write out checks for the rent of an employee. I think this should have raised doubts in his mind. Is there any evidence that he knows anything about Hayworth Homes? To know whether or not this woman might have been an owner of Hayworth Homes? Is there anything in the record that would get into that? There's not, Your Honor. There's been no evidence provided regarding his knowledge of Hayworth Homes or Ms. Benningfield's employment at all. Clearly, I think the trial court erred when it granted this motion. The third issue is the trial court's erroneous denial of Hayworth Homes' timely motion to vacate judgment. The standard of review for this issue is whether there has been an abuse of discretion and whether substantial justice is being done between the parties. As previously stated, Hayworth Homes did not appear on the date of trial based on a miscalendering mistake. Counsel for Hayworth Homes misheard the date stated in court, and Judge Leonard denied Hayworth Homes' motion because he did not believe the underlying theory of conversion was a valid legal theory for recovery. I believe the trial court abused this discretion by denying this motion to vacate because it did not properly consider the factors in making a determination on this motion. 735 ILCS 5-2-1203 states in pertinent part, In all cases tried without a jury, any party may, within 30 days after the entry of a judgment, or within any further time the court may allow, within 30 days of any extension thereof, to file a motion for rehearing, or a retrial, or modification of the judgment, or to vacate the judgment, or for other relief. The case In Remarriage of Sutherland, a 2nd District case, stated that the court has great discretion to decide whether to modify or set aside its judgment within 30 days of its entry pursuant to a 2-1203 motion. According to the 1st District case, Sikorsky v. Sikorsky, On review, the appellate court must examine not merely whether the court's order pursuant to a section 2-1203 motion was represented an abuse of discretion, but rather whether, regarding that order, substantial justice is being done between the parties, and it is reasonable to compel the other party to go to trial on the merits. The existence of a meritorious defense and due diligence are factors in determining whether substantial justice is being done. In Myersoft v. Hoyos, the 1st District found that there was an abuse of discretion, and reversed the trial court's denial of a motion to vacate, where the defendant failed to appear because he had been detained in another courtroom, and a judgment was entered. The 1st District determined that where counsel had a reasonable explanation for not appearing on time, and was diligent in trying to rectify the situation, there was an abuse of discretion in not granting the timely motion to vacate. In the incident case, Counselor Hayworth Holmes filed a motion to vacate as soon as she became aware that a judgment had been entered, and realized her mistake well within the 30 days, and provided a reasonable explanation for her mistake, that of a calendaring and mishearing and calendaring mistake. At the hearing on the motion, Judge Leonard stated that the court did not believe that there was any culpable negligence on the part of Hayworth Holmes Counsel, and that it was indisputable that this was a calendaring mistake. The trial court abused its discretion here, where here, just as in Miserc, a rational reason existed for the failure to appear, and Counsel was diligent in rectifying the situation. The reason cited by Judge Leonard for denying the motion to vacate, was that he did not believe the underlying theory of conversion to be a meritorious claim. However, this claim is meritorious, and the court abused its discretion by not granting the motion. The second restatement of torts describes conversion as an intentional exercise of dominion or control over a chattel, which so seriously interferes with the right of another to control it, that the actor may justly be required to pay the full value of the chattel. Numerous courts have ruled that money can be the subject of a conversion, provided that it can be described, identified, or segregated. Here, the checks were written for specific amounts, were drawn on Hayworth Holmes' account, and can be specifically identified. As to the issue of intent, comment to section 224 of the second restatement of torts states that the only intention required is the intention to exercise control, even where he may not be aware of the existence of the rights with which he is interfering. Basically, one can be a converter where he innocently buys stolen goods. Therefore, the mere fact that Mr. Wan exercised control over Hayworth Holmes' identifiable funds is sufficient to make him liable for conversion. Hayworth Holmes clearly has a meritorious claim, and the trial court erred when it denied the Hayworth Holmes motion to vacate. Lastly, the trial court abused its discretion because it would be completely reasonable to require the other party to go to trial on the merits here, and there is no reason that Mr. Wan should not be required to go to trial. What is unreasonable in this situation is to punish Hayworth Holmes. Hayworth Holmes was the victim of a conversion, and the victim of a countering mistake of their attorney. Substantial justice would not be being done if the court decided to affirm the motion, or the denial of the motion to vacate judgment. I ask this court to reverse the order granting the motion for transfer of venue, and order this case remanded to Coles County for further proceedings. And the alternative only, this court should reverse the order denying the motion to vacate judgment, and remand the case to Champaign County, with directions to allow Hayworth Holmes to have a trial on the merits. Thank you. Thank you, Ms. Cable. Ms. Funderburg? May it please the court and counsel, my name is Rochelle Funderburg. I represent the defendant in this matter. What the plaintiff is asking this court to do is to reverse two trial court judges in two different counties on each decision that they have made in this case. Both should be sustained. Essentially with regard to venue, the interesting thing about the venue is apparently the plaintiff believes that this alleged conversion took place at the time when the funds were removed from her client's account. Actually, I think the conversion, if there was one, didn't take place at that point, but rather would have taken place when the funds were sent back to my client's account. So if you're going to allege that there is a conversion, the funds have to reach my client before there is any conversion. Otherwise, what you have is a situation where the plaintiff's bank account and that location controls venue, which can't possibly be the case. If you look at what happened here, if you accept that argument, then think about where venue could lie. If the plaintiff in this case, suppose they banked online or through the mail and it was in Cook County. Theoretically, under their argument, then venue would be in Cook County or offshore perhaps. So the point is that venue was proper in this case and properly established by way of the affidavit and the motion that I filed for my client. If you look at the affidavit that the trial court in Coles County had, the defendant clearly established that at no time did he ever own property in Coles County. At no time did he ever do business in Coles County. He had no bank accounts in Coles County. He never visited or otherwise entered Coles County. He lives in Elgin, which is Kane County. He owns property in Champaign County. He rented that property in Champaign to Tabitha Benningfield and the checks upon which the plaintiff bases these claims were delivered to him in Champaign County. And he deposited the checks then in his account in Busey in Champaign County or Chase Bank in Cook County. So if you're going to look at venue in terms of where the transaction occurred, in fact, this transaction was finalized, if you look at it from a point of view of conversion, at the point where the funds went back to my client. Otherwise you would have a situation where, I can foresee a situation where the funds are removed and they never reach my client's account. Has a conversion occurred? I would say no. And you can't base venue then on that theory. With regard to, once it was transferred then to Champaign County, ultimately we ended up with bench trial day. There I had filed an answer with an affirmative defense of holder in due course. At that point we went to trial. I appeared along with my client who had traveled from Elgin and we went ahead and had a trial. And basically I had a testimony from my client with regard to his holder in due course situation. And it was a pretty brief trial, but basically what he testified to under oath is that Ms. Benfield gave him some checks. There were three of them. At the time he accepted the checks, no one had contacted him about any problems with the checks. And if you look at the checks, the checks are dated July 7, 2011, August 31, 2011, and September 30, 2011. And all throughout that period of time, no one from Hayworth Homes apparently found out anything, caught on to anything, called my client, nothing. So at the time he takes the checks, nobody has said there's anything wrong with the checks. At the time that he took the checks he said he had no reason to believe that Ms. Benfield wasn't authorized to give him the checks. There was nothing on the face of the checks that called into question their authenticity and that he applied those checks to her rent obligations. And then he further testified that the first time that he found there was a problem with the checks was when he got a demand letter in either December or January from Hayworth Homes' attorney. If you look at the holder in due course defense, basically in order to be a holder in due course you must be a holder of a negotiable instrument taken for value, which we have, in good faith, which we also have, without notice that it's either overdue, not applicable, without notice it's been dishonored or not paid, still not applicable, or is subject to a valid claim or defense by any party. Nothing on this record or on the face of those checks would indicate that there was something wrong with these checks. There must also be no reason to question its authenticity on account of apparent evidence of forgery, alteration, irregularity, or incompleteness. The point of holder in due course is that one must honestly pay for the instrument and not know that there's anything wrong with it. And if that's the case, then that person gets paid, period. Otherwise, if you accept their argument, you've turned the holder in due course defense completely on its head. So I think that really when Judge Leonard was at the trial, he did mention that there had been no response, but he went ahead and said, okay, based on this record, have you established the affirmative defense of holder in due course? And he said yes. And that was basically the basis he found judgment for my client and then vacated or dismissed the complaint. When we got then to the point where we had a motion to vacate, the plaintiff had filed a motion to vacate and basically set forth the reasons. Counsel, let me ask you a question. What's your position on a mutual service casualty versus Elizabeth State Bank that the appellant has cited with respect to the fact that your client, as they allege, should have been on notice that there was a problem since they were not owed anything by this company and had no transaction or affiliation with them? I would say that in terms of being a holder in due course, you're not obligated to be indebted to the person who's bringing the suit. I think that if you are a holder in due course, that very often you would be completely outside the underlying transaction. I think that's what happened here. Otherwise, you would never be able to defend against a forged document or something of that nature. So I think in this case, really what you have to look at, it's not only that there was no debt between Hayward's Homes and my client. If you accept that as a rule, then there is no such thing as a holder in due course for a forged document, at least under these scenarios. But I don't believe that that's a requirement that there be some debt or that if there is no debt that that puts you on special notice. I think you have to look at the face of the document. In terms of the motion to vacate, the reason for the plaintiff not attending, I don't think that the trial court found fault in denying the motion to vacate. It was looking at it more from the standpoint of, is there anything that the plaintiff could have presented that would have made a difference in the trial court's opinion or decision, and the trial court basically found that the plaintiff could not state a claim for conversion. And so that the motion to vacate was simply moved because it was finding that there was no claim that could be made. Is that true? I do think that that was at least some of the thinking there. I do think that he was looking at in terms of can they bring a cause of action for conversion and I think he thought they could, there's no question about that. But I think he still reached the correct conclusion here, even if you don't agree with that, because he also found that we established the holder in due course defense. So I think that regardless of how you get to that decision, the decision here was correct. I would also say that with regard to the motion to vacate, the standard there is abuse of discretion, which is essentially that no person, no reasonable person, would reach the same conclusion. And I think that's really not here in terms of this particular motion. I would also say that we hear a lot about substantial justice and that the parties should be required to go to trial. I went to trial. I mean, that's the curious thing about this. If you read the briefs, there's a lot of talk about no trial. We had a trial. It's unfortunate that the other side didn't appear, but my client drove down from Elgin and we had testimony from my client. And so I think that for those reasons, the trial courts in each county reached the right conclusion, even if you don't agree with how they got there, and also that we had a trial. And the trial there was correct in terms of the outcome as well. The motion for transfer of venue was properly granted. The outcome of the trial was proper. The motion to vacate was properly denied. And I think that this court should affirm those judges. However, should you find that the case should be remanded to Champaign County, then I think at a minimum, Hayworth Homes should have to pay my client their fees and costs associated with the trial that everybody went to but Hayworth Homes. And so for those reasons, Your Honor, I would ask that you affirm the trial courts of Colts County and Champaign County. Thank you, Ms. Vunderburg. Ms. Cable, any rebuttal? Yes, Your Honor. Your Honor, on the issue that Ms. Vunderburg presented of venue, she stated that the venue would have been established at that point in time when the funds reached her client. Well, I would ask you to refer back to my initial analogy that I presented with the generator. Mr. Wan sent his agent down to get the generator. Say he got in a car accident on the way back and that generator was destroyed. Wouldn't he still be liable for conversion then? I think that the issue here is that the conversion occurred when those funds were converted and taken from his bank account. At that point in time was the place where they were removed. That is the place of venue. So if he banked in California, he'd have to go to California to try the case? I argue that the place where they have an account, the bank account where they have their money at usually is one place. You can access your bank account from multiple places, an ATM, online, etc. But you have an account in one place. And when those funds are removed from that account, that is the place in which the conversion occurs. So the answer to my question is yes? Yes, sir. Okay. On the issue of holder in due course, I think what Ms. Vanderburg fails to consider is the applicable defenses that could have been argued if we were present at trial there. There is the defense of illegality. Under the Commercial Code, a defense to a holder in due course is the underlying action here. Here there was a theft of the funds. These funds were stolen by Tabitha Biddingfield and turned over to Mr. Want. Clearly then, based on the defense of illegality, he cannot take as a holder in due course.  I think it was an abuse of discretion here. I believe the judge was wrong in the law. I think that clearly a conversion claim is a viable legal theory in this instance. And I don't believe that he was correct and he ignored recognized principles of law. Have we been allowed to present our evidence at trial? I believe we would have shown the judge that there was a viable legal theory for conversion here. Therefore, I ask that first and foremost that the motion for transfer of venue that was granted be overturned and reversed and this case be remanded back to Poles County, or in the alternative that this case be remanded to Champaign County for further proceedings and allow Hayworth Homes to put on its evidence for a conversion. Thank you. Thank you, Ms. Cable. This court will take this matter under advisement and will be in recess.